United States Court of Appeals
For the First Circuit


No. 95-1086

MARY DEREN, ET AL.,

Plaintiffs, Appellants,

v.

DIGITAL EQUIPMENT CORP.,

Defendant, Appellee.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Frank H. Freedman, Senior U.S. District Judge] 



Before

Cyr, Circuit Judge, 
Coffin and Bownes, Senior Circuit Judges. 



Mark L. Hare for appellants. 
Jay M. Presser with whom Jeffrey C. Hummel was on brief for 
appellee.



July 25, 1995


COFFIN, Senior Circuit Judge. As part of a severance 

agreement, plaintiffs signed releases waiving all claims against

their former employer. Three and one half years later,

contending that the releases had been coerced, they brought this

ERISA suit. The district court dismissed, applying the common

law rule that a party may not avoid a contract based on duress

without first returning the consideration received. We express

no view on whether ERISA plaintiffs must satisfy this "tender

back" requirement. Instead, we affirm the court's dismissal on

the ground that, by waiting so long before attempting to avoid

the releases, plaintiffs have ratified them, thus waiving their

claims.

I. Background 

We take the facts as alleged in the complaint. E.g., 

Waterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). Plaintiffs were 

employees of a Digital Equipment facility in Enfield,

Connecticut. In May or June 1990, Digital offered all employees

at the Enfield plant a severance package, called a Transitional

Financial Support Option (TFSO), which consisted of a lump sum

cash payment of at least 40 weeks' pay. Plaintiffs agreed to

accept the TFSO in a timely manner. Digital, however, apparently

underestimating the number of employees who would accept its

offer, refused to give plaintiffs the TFSO benefits. Instead, it

gave the TFSO package to ten other employees. Plaintiffs then

requested information from Digital concerning the criteria by

which the ten employees were selected. Digital, in response,

-2-

offered plaintiffs an alternate severance package, with less

generous benefits than the TFSO. In November and December of

1990, plaintiffs accepted the alternate severance plan, and, in

exchange, signed releases waiving all claims against Digital,

including claims arising out of its refusal to give them the TFSO

benefits.

Plaintiffs filed this suit on June 17, 1994, more than three

and one half years later, claiming that they had been coerced

into accepting the lesser package and signing the releases. In

particular, they alleged that Digital had isolated them, given

them only four days to accept or reject the alternate plan, and

told them that they would likely suffer a pay reduction or be

transferred or laid off without any benefits if they did not

accept. Digital moved to dismiss the suit on a number of

grounds. The district court held that ERISA left undisturbed the

common law rule that, as a precondition to attempting to avoid a

contract or release, the consideration supporting the contract or

release must be tendered back to the released party. Since

plaintiffs concededly have retained the benefits of the alternate

severance package, the district court concluded that their suits

were not viable.

II. Analysis 

The parties have extensively briefed whether ERISA displaces

the common law tender back requirement, a question apparently of

-3-

first impression in any federal court of appeals.1 We leave

this interesting question for another day.

In In re Boston Shipyard Corp., 886 F.2d 451 (1st Cir. 

1989), we said:

It is well settled that "[a] contract or release, the
execution of which is induced by duress, is voidable, not
void, and the person claiming duress must act promptly to
repudiate the contract or release or he will be deemed to
have waived his right to do so." 

Id. at 455 (quoting Di Rose v. PK Management Corp. 691 F.2d 628, 

633-34 (2d Cir. 1982)). Applying this principle, we found that a

party had ratified a release agreement by accepting payment and

waiting for over a year and one half before claiming that it was

duress-induced. Id. We recently reiterated the rule. See 

Vasapolli v. Rostoff, 39 F.3d 27, 35 n.5 (1st Cir. 1994) ("A 

contract signed under duress is voidable, but not automatically

void. By accepting the funds and failing to seek a remedy based

 

1 In Hogue v. Southern Ry. Co., 390 U.S. 516 (1968), the 
Supreme Court held that the Federal Employer Liability Act (FELA)
had displaced the tender back requirement, and allowed 
plaintiff's suit to go forward despite his failure to return
consideration received for a release of claims. Several courts
of appeals have addressed the applicability of the Hogue decision 
to a variety of remedial statutes, such as 42 U.S.C. 1983, the
ADEA, Title VII, and the Jones Act, with mixed results. Compare 
Forbus v. Sears Roebuck & Co., 958 F.2d 1036, 1041 (11th Cir. 
1992) (no tender back requirement for ADEA plaintiff) and Oberg 
v. Allied Van Lines, 11 F.3d 679, 684 (7th Cir. 1993) (same) with 
Wamsley v. Champlin Refining and Chemicals, Inc., 11 F.3d 534, 
539-40 (5th Cir. 1993) (contra). See also Botefur v. City of 
Eagle Point, 7 F.3d 152, 156 (9th Cir. 1993) (no tender back 
requirement for 1983 plaintiff); Smith v. Pinell, 597 F.2d 994, 
996 (5th Cir. 1979) (no tender back requirement for Jones Act
plaintiff); Flemming v. U.S. Postal Service AMF O'Hare, 27 F.3d 
259, 260-62 (7th Cir. 1994) (enforcing tender back requirement
for Title VII plaintiff). None, apparently, has been asked to
determine whether Hogue applies to ERISA. 

-4-

on duress within a reasonable period of time . . . , the

plaintiffs forfeited any entitlement to relief on this basis.")

(citations omitted). See also Abbadessa v. Moore Business Forms, 

Inc., 987 F.2d 18, 22-24 (1st Cir. 1993) (finding ratification of 

an allegedly avoidable release under New Hampshire law). Other

courts agree. E.g., Sutter Home Winery, Inc. v. Vintage 

Selections, Ltd., 971 F.2d 401, 409 (9th Cir. 1992) (after 

accepting the benefits of an agreement for four years, party may

no longer avoid the agreement based on claimed duress); Grillet 

v. Sears, Roebuck & Co., 927 F.2d 217, 220 (5th Cir. 1991) 

(retaining benefits of release for two years constitutes

ratification).

We think the instant case falls squarely within this rule.

The undisputed facts show that, for three and one half years

after any claimed duress had passed, the plaintiffs enjoyed the

benefits of the bargain they now wish to avoid. During this

time, they never sought to repudiate their agreements based on

duress.2 Thus, whether or not the releases initially were
 

2 We think the district court was overly generous in stating
that plaintiffs claimed they orally had repudiated the releases.
The court cited only to a footnote in plaintiffs' memorandum
opposing the motion to dismiss, which asserted that they
"notified Digital of their claims promptly." To repudiate a
contract, however, "a party must unequivocally declare his intent
not to perform his obligation." Taylor v. Gordon Flesch Co., 
Inc., 793 F.2d 858, 864 (7th Cir. 1986). Plaintiffs point to no 
such unambiguous statement of intent to disavow their agreement
to forego legal claims against Digital before they filed this
lawsuit. The language relied on by the district court is far too
vague to be read as a claimed repudiation of the releases.
Indeed, we suspect it might refer to what plaintiffs' counsel
described at oral argument as plaintiffs' post-settlement
requests for information concerning the TFSO. Perhaps more

-5-

secured through duress, plaintiffs ratified them by their

subsequent conduct. See Boston Shipyard, 886 F.2d at 455 (party 

may ratify an agreement entered into under duress by, inter alia, 

"`remaining silent or acquiescing in the contract for a period of

time after he has the opportunity to avoid it'") (quoting United 

States v. McBride, 571 F. Supp. 596, 613 (S.D.Tex. 1988)). By 

ratifying the releases, plaintiffs waived the claims they now

attempt to assert. Their complaint was properly dismissed.

Affirmed. 

 

importantly, the essential document for evaluating a motion to
dismiss, the amended complaint, contains no allegation that
plaintiffs repudiated the releases before bringing suit.

-6-