USCA1 Opinion

 

 United States Court of Appeals For the First Circuit ____________________ No. 95-1086 MARY DEREN, ET AL., Plaintiffs, Appellants, v. DIGITAL EQUIPMENT CORP., Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Frank H. Freedman, Senior U.S. District Judge] __________________________ ____________________ Before Cyr, Circuit Judge, _____________ Coffin and Bownes, Senior Circuit Judges. _____________________ ____________________ Mark L. Hare for appellants. ____________ Jay M. Presser with whom Jeffrey C. Hummel was on brief for _______________ __________________ appellee. ____________________ July 25, 1995 ____________________ COFFIN, Senior Circuit Judge. As part of a severance _____________________ agreement, plaintiffs signed releases waiving all claims against their former employer. Three and one half years later, contending that the releases had been coerced, they brought this ERISA suit. The district court dismissed, applying the common law rule that a party may not avoid a contract based on duress without first returning the consideration received. We express no view on whether ERISA plaintiffs must satisfy this "tender back" requirement. Instead, we affirm the court's dismissal on the ground that, by waiting so long before attempting to avoid the releases, plaintiffs have ratified them, thus waiving their claims. I. Background __________ We take the facts as alleged in the complaint. E.g., ____ Waterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). Plaintiffs were ________ ____ employees of a Digital Equipment facility in Enfield, Connecticut. In May or June 1990, Digital offered all employees at the Enfield plant a severance package, called a Transitional Financial Support Option (TFSO), which consisted of a lump sum cash payment of at least 40 weeks' pay. Plaintiffs agreed to accept the TFSO in a timely manner. Digital, however, apparently underestimating the number of employees who would accept its offer, refused to give plaintiffs the TFSO benefits. Instead, it gave the TFSO package to ten other employees. Plaintiffs then requested information from Digital concerning the criteria by which the ten employees were selected. Digital, in response, -2- offered plaintiffs an alternate severance package, with less generous benefits than the TFSO. In November and December of 1990, plaintiffs accepted the alternate severance plan, and, in exchange, signed releases waiving all claims against Digital, including claims arising out of its refusal to give them the TFSO benefits. Plaintiffs filed this suit on June 17, 1994, more than three and one half years later, claiming that they had been coerced into accepting the lesser package and signing the releases. In particular, they alleged that Digital had isolated them, given them only four days to accept or reject the alternate plan, and told them that they would likely suffer a pay reduction or be transferred or laid off without any benefits if they did not accept. Digital moved to dismiss the suit on a number of grounds. The district court held that ERISA left undisturbed the common law rule that, as a precondition to attempting to avoid a contract or release, the consideration supporting the contract or release must be tendered back to the released party. Since plaintiffs concededly have retained the benefits of the alternate severance package, the district court concluded that their suits were not viable. II. Analysis ________ The parties have extensively briefed whether ERISA displaces the common law tender back requirement, a question apparently of -3- first impression in any federal court of appeals.1 We leave this interesting question for another day. In In re Boston Shipyard Corp., 886 F.2d 451 (1st Cir. _____________________________ 1989), we said: It is well settled that "[a] contract or release, the execution of which is induced by duress, is voidable, not void, and the person claiming duress must act promptly to repudiate the contract or release or he will be deemed to have waived his right to do so."  Id. at 455 (quoting Di Rose v. PK Management Corp. 691 F.2d 628, ___ _______ ___________________ 633-34 (2d Cir. 1982)). Applying this principle, we found that a party had ratified a release agreement by accepting payment and waiting for over a year and one half before claiming that it was duress-induced. Id. We recently reiterated the rule. See ___ ___ Vasapolli v. Rostoff, 39 F.3d 27, 35 n.5 (1st Cir. 1994) ("A _________ _______ contract signed under duress is voidable, but not automatically void. By accepting the funds and failing to seek a remedy based  ____________________ 1 In Hogue v. Southern Ry. Co., 390 U.S. 516 (1968), the _____ _________________ Supreme Court held that the Federal Employer Liability Act (FELA) had displaced the tender back requirement, and allowed ___ plaintiff's suit to go forward despite his failure to return consideration received for a release of claims. Several courts of appeals have addressed the applicability of the Hogue decision _____ to a variety of remedial statutes, such as 42 U.S.C. 1983, the ADEA, Title VII, and the Jones Act, with mixed results. Compare _______ Forbus v. Sears Roebuck & Co., 958 F.2d 1036, 1041 (11th Cir. ______ ____________________ 1992) (no tender back requirement for ADEA plaintiff) and Oberg ___ _____ v. Allied Van Lines, 11 F.3d 679, 684 (7th Cir. 1993) (same) with ________________ ____ Wamsley v. Champlin Refining and Chemicals, Inc., 11 F.3d 534, _______ ______________________________________ 539-40 (5th Cir. 1993) (contra). See also Botefur v. City of ______ ___ ____ _______ _______ Eagle Point, 7 F.3d 152, 156 (9th Cir. 1993) (no tender back ___________ requirement for 1983 plaintiff); Smith v. Pinell, 597 F.2d 994, _____ ______ 996 (5th Cir. 1979) (no tender back requirement for Jones Act plaintiff); Flemming v. U.S. Postal Service AMF O'Hare, 27 F.3d ________ _______________________________ 259, 260-62 (7th Cir. 1994) (enforcing tender back requirement for Title VII plaintiff). None, apparently, has been asked to determine whether Hogue applies to ERISA. _____ -4- on duress within a reasonable period of time . . . , the plaintiffs forfeited any entitlement to relief on this basis.") (citations omitted). See also Abbadessa v. Moore Business Forms, ___ ____ _________ _____________________ Inc., 987 F.2d 18, 22-24 (1st Cir. 1993) (finding ratification of ____ an allegedly avoidable release under New Hampshire law). Other courts agree. E.g., Sutter Home Winery, Inc. v. Vintage ____ ___________________________ _______ Selections, Ltd., 971 F.2d 401, 409 (9th Cir. 1992) (after _________________ accepting the benefits of an agreement for four years, party may no longer avoid the agreement based on claimed duress); Grillet _______ v. Sears, Roebuck & Co., 927 F.2d 217, 220 (5th Cir. 1991) _____________________ (retaining benefits of release for two years constitutes ratification). We think the instant case falls squarely within this rule. The undisputed facts show that, for three and one half years after any claimed duress had passed, the plaintiffs enjoyed the benefits of the bargain they now wish to avoid. During this time, they never sought to repudiate their agreements based on duress.2 Thus, whether or not the releases initially were  ____________________ 2 We think the district court was overly generous in stating that plaintiffs claimed they orally had repudiated the releases. The court cited only to a footnote in plaintiffs' memorandum opposing the motion to dismiss, which asserted that they "notified Digital of their claims promptly." To repudiate a contract, however, "a party must unequivocally declare his intent not to perform his obligation." Taylor v. Gordon Flesch Co., ______ ___________________ Inc., 793 F.2d 858, 864 (7th Cir. 1986). Plaintiffs point to no ____ such unambiguous statement of intent to disavow their agreement to forego legal claims against Digital before they filed this lawsuit. The language relied on by the district court is far too vague to be read as a claimed repudiation of the releases. Indeed, we suspect it might refer to what plaintiffs' counsel described at oral argument as plaintiffs' post-settlement requests for information concerning the TFSO. Perhaps more -5- secured through duress, plaintiffs ratified them by their subsequent conduct. See Boston Shipyard, 886 F.2d at 455 (party ___ _______________ may ratify an agreement entered into under duress by, inter alia, _____ ____ "`remaining silent or acquiescing in the contract for a period of time after he has the opportunity to avoid it'") (quoting United ______ States v. McBride, 571 F. Supp. 596, 613 (S.D.Tex. 1988)). By ______ _______ ratifying the releases, plaintiffs waived the claims they now attempt to assert. Their complaint was properly dismissed. Affirmed. ________  ____________________ importantly, the essential document for evaluating a motion to dismiss, the amended complaint, contains no allegation that plaintiffs repudiated the releases before bringing suit. -6-